**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **BIZJET INTERNATIONAL SALES,** ) | |
| **AND SUPPORT, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | No. 08-CV-242-TCK-PJC |
| ) | |
| **AERO TOY STORE, LLC; and** ) | |
| **JC PARTNERS CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

Before the Court are Plaintiff's Motion for Default Judgment Against JC Partners Corporation ("Motion for Default Judgment") (Doc. 22); Defendant JC Partners Corporation's Motion to Vacate Entry of Default ("Motion to Vacate") (Doc. 58); and Bizjet's Opposed Motion to Amend the Scheduling Order (Doc. 70).

**I.     Background**

On April 25, 2008, Plaintiff Bizjet International Sales and Support, Inc. ("Bizjet") filed a Complaint against JC Partners Corporation ("JCP") and Aero Toy Store, LLC ("ATS"), asserting claims for breach of contract and quantum meruit. The following facts are alleged in Bizjet's Complaint. Bizjet entered into a contract with JCP whereby Bizjet was to provide repairs to an aircraft ("Aircraft"). At the time Bizjet entered the contract for services with JCP, JCP was leasing the Aircraft from ATS.[1] At all relevant times, ATS was the actual owner of the Aircraft. While Bizjet was performing repairs, ATS cancelled its lease with JCP. ATS agreed to pay Bizjet for the labor and services already provided and contracted with Bizjet to provide additional repairs to the

---

[1] According to its website, JCP is in the business of offering air charter services.

1

Aircraft. JCP and ATS refused payment to Bizjet, thereby breaching their respective contracts with Bizjet and unfairly receiving the benefit of Bizjet's services.

On May 2, 2007, Bizjet effected service of process on JCP's service agent, but JCP failed to answer within the required time. On May 28, 2008, the Court Clerk entered default against JCP. ATS filed an answer, in which ATS asserted several counterclaims against Bizjet, including a counterclaim for negligent provision of services. ATS also filed a cross claim against JCP. On July 7, 2008, Bizjet moved for default judgment against JCP in the amount of $2,773,339.17, as reflected in an invoice attached as Exhibit 1 to the Motion for Default Judgment.[2]

On July 18, 2008, JCP filed a response to the Motion for Default Judgment, stating that it would be filing a motion to vacate the Clerk's entry of default "within days" of filing such response. JCP argued that entry of default judgment against it was improper because the existence of multiple defendants created the danger of inconsistent outcomes. Specifically, JCP argued that it "would be wholly illogical for [ATS] to ultimately win the case based upon the defense of negligent provision of services and [JCP] to remain liable to Bizjet for those same negligent services." (Resp. to Mot. for Default J. 4-5.) Alternatively, JCP requested an evidentiary hearing to dispute the $2,773,339.17 amount.

---

[2] On July 14, 2008, ATS filed a motion for temporary restraining order, preliminary injunction, and request for emergency hearing ("Motion for TRO") to prevent Bizjet from conducting a private sale of the Aircraft. ATS argued, *inter alia*, that Bizjet did not have a valid lien on the Aircraft and that Title 42, sections 91 and 91A were unconstitutional state statutes. On July 18, 2008, Magistrate Judge Paul Cleary conducted an evidentiary hearing on the Motion for TRO.

On July 30, 2008, ATS and Bizjet reached a settlement (the "Settlement") and, on August 7, 2008, filed a Joint Motion for Dismissal with Prejudice of all claims between them.[3] On August 8, 2008, Bizjet filed its reply in support of its Motion for Default Judgement, contending that JCP's argument regarding inconsistent outcomes was unavailing in light of the Settlement and that there was no reason to delay granting Bizjet's Motion for Default Judgment against JCP. On August 29, 2008, well after JCP had retained counsel and responded to the Motion for Default Judgment, JCP filed the Motion to Vacate pending before the Court. On October 30, 2008, ATS voluntarily dismissed its cross claim against JCP. The only claims remaining in this litigation are those asserted by Bizjet against JCP.

## II.     Motion to Vacate

Federal Rule of Civil Procedure 55(c) provides that a court "may set aside an entry of default for good cause." The "principal factors in determining whether a defendant has met the good cause standard are (1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense." *Hunt v. Ford Motor Co.*, No. 94-3045, 1995 WL 523646, at * 3 (10th Cir. Aug. 29, 1995) (citing *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)); *see also School-Link Tech., Inc. v. Applied Res., Inc.*, 471 F. Supp. 2d 1101, 1119 (D. Kan. 2007); *First Interstate Bank of Okla., N.A. v. Serv. Stores of Am., Inc.*, 128 F.R.D. 679, 680 (W.D. Okla. 1989).[4] The factors are not "talismanic," and a court may consider other factors. *Hunt*, 1995 WL 523646,

---

[3] By agreement of the parties, the amount of the Settlement was filed under seal as a supplement to Bizjet's Motion for Default Judgment against JCP.

[4] The parties did not cite, and the Court was unable to locate, a published Tenth Circuit decision setting forth the Rule 55(c) factors.

at * 3. The analysis is guided by the general principles that "[t]he preferred disposition of any case is upon its merits and not by default judgment" but that such preference must be "counterbalanced by considerations of social goals, justice and expediency." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *see also Barta v. Long*, 670 F.2d 907, 909 (10th Cir. 1982) (stating that "defaults are not favored"). Although there are some similarities in the analysis of a motion to vacate a clerk's entry of default pursuant to Rule 55(c) and a motion to vacate a court's entry of default judgment pursuant to Rule 60(b), it is well established that the "good cause" required by Rule 55(c) "poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment" under Rule 60(b). *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997).

### A. Culpable Conduct

"Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default." *United States v. Timbers Preserve, Routt County, Colo.*, 999 F.2d 452, 454 (10th Cir. 1993). If the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on that basis alone. *Hunt*, 1995 WL 523646, at * 3.

JCP is a Delaware corporation with a registered service agent in Delaware ("Agent"). (Urdaneta Aff. ¶ 3, Ex. B to Mot. to Vacate.) JCP's President and sole shareholder is Luis Felipe Urdaneta Calderon ("Urdaneta"), who is a resident and citizen of Venezuela. (*Id.* ¶¶ 1-2.) On May 2, 2008, the Agent received service of the Complaint and forwarded the Complaint to JCP via Federal Expresses at the address JCP provided to the Agent, which was 4201 Stirling Road, Southwest Ranches, Florida ("JCP Florida Office"). On May 5, 2008, Federal Express delivered

the Complaint to the JCP Florida Office. (*Id.* ¶¶ 4-6.) Urdaneta avers that the package was simply left at the JCP Florida Office and that neither he nor any other JCP employees signed for it. (*Id.* ¶ 6.) Urdaneta further contends that he did not return to the JCP Florida Office until June 3, 2008, that this was the first time he became aware of the Complaint, and that he immediately began looking for Tulsa counsel to represent JCP. (*Id.* ¶ 8.) JCP's first filing with the Court occurred on July 18, 2008 in the form of a response to the Motion for Default Judgment. It was not until August 29, 2008, almost ninety days following the date Urdaneta alleges to have received actual notice, that JCP filed the Motion to Vacate. In an attempt to explain the delay between the receipt of actual notice and the filing of the Motion to Vacate, Urdaneta states that "the information necessary for [the Motion to Vacate] has been thwarted by the fact that I am in the Country of Venezuela and require a translator to communicate" with counsel. (*Id.* ¶ 10.)

Bizjet argues that, assuming Urdaneta did not receive actual notice of the lawsuit until June 3, this does not excuse JCP's failure to answer because the Agent received service and forwarded the Complaint to the address provided by JCP. According to Bizjet, Urdaneta "left an empty storefront" to receive important legal documents for over a month and "willfully avoided receipt of the documents properly served on its registered service agent." (Resp. to Mot. to Vacate 3.) As to the delays following the June 3, 2008 receipt of actual notice, including waiting until judgment was imminent before filing a response to the Motion for Default Judgment and waiting even longer to file the Motion to Vacate, Bizjet argues that "[t]he only believable explanation is willful or deliberately careless delay." (*Id.* 5.) Bizjet contends that it is not difficult to communicate between Oklahoma and Venezuela, particularly when the client is an American corporation, and that any language barriers simply cannot explain the delays in this case.

The Court finds that JCP's conduct, *after* receiving actual notice of the lawsuit and hiring counsel, has been less than diligent. The Court can only speculate as to why JCP's counsel decided to wait over a month to move to set aside the default rather than "within days" as promised in JCP's response to the Motion for Default Judgment. The Court further agrees with Bizjet that Urdaneta's language barrier does not adequately explain such delay. However, the crucial question as to this factor is whether JCP engaged in "culpable conduct" that led to entry of default by the Clerk on May 28, 2008. Urdaneta testified in his affidavit that he did not receive actual notice of the lawsuit until June 3, 2008 and that he then immediately sought and hired Tulsa counsel. Under these circumstances, the Court cannot find that JCP "defaulted willfully" or had "no excuse" for allowing the Clerk to enter default on May 28, 2008. The "excuse" accepted by the Court is that JCP did not have actual knowledge of the lawsuit at the time default was entered. While JCP may have an inadequate system for timely receiving service from its Agent, the Court is not convinced that JCP's failure to receive service of the Complaint was deliberate, willful, or wholly without excuse. Accordingly, the Court finds that JCP has met its burden of showing that the entry of default on May 28, 2008 was not the result of "culpable conduct" by JCP, as that term is used for purposes of Rule 55(c). *See School-Link Tech., Inc.*, 471 F. Supp. 2d at 1119 (finding that entry of default was not result of culpable conduct but rather was the result of inadvertence).

      B.    <u>Prejudice</u>

Next, the Court must analyze whether Bizjet would be prejudiced if the default is set aside. Bizjet's argument regarding prejudice is essentially that the longer it takes to obtain a judgment against JCP, "the higher the risk that there will be less and less assets available to satisfy the judgment." (Resp. to Mot. to Vacate 6.) Citing JCP's website and Federal Aviation Administration

records, Bizjet argues that the Aircraft (which was leased from ATS and is no longer in JCP's possession) was the only real asset of JCP and that there is a risk that JCP is not earning any revenue. Thus, the alleged prejudice is the risk and delay associated with obtaining judgment on the merits rather than obtaining judgment more promptly by virtue of the pending Motion for Default Judgment. The Court finds this is not the type of "prejudice" to Bizjet that warrants denying the Motion to Vacate. Bizjet still has every opportunity to prosecute its claim against JCP. Because the Court has not yet held an evidentiary hearing on the Motion for Default Judgment, Bizjet has spent relatively little time or expense attempting to prove the amount of damages sought. Nor will vacation of the entry of default significantly disrupt the schedule of the case. With respect to the dissipation of JCP's assets, this is always a risk during the litigation process and is insufficient to constitute the type of "prejudice" necessary to deny a motion to set aside. *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983) ("Mere delay in satisfying a plaintiff's claim, if it should succeed at trial, is sufficient prejudice to require a denial of a motion to set aside a default judgment.").

      C.    <u>Meritorious Defense</u>

For purposes of the third factor of the Rule 55(c) analysis, "the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action." In re Stone, 588 F.2d 1316, 1319 (10th Cir. 1978). "[T]he movant's version of the facts and circumstances supporting his defense will be deemed to be true," and "the focus is on the sufficiency of the factual statement contained in the moving papers." *Id.* In contrast to notice pleading requirements, the rule relating to relief from default "contemplates more than mere legal conclusions, general denials, or

7

simple assertions that the movant has a meritorious defense." *Id.* Instead, the moving party must present "a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were believed, would be meritorious." *Id.* District courts within the Tenth Circuit have interpreted this as a liberal standard and stated that a "defendant's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." *Crutcher v. Coleman*, 205 F.R.D. 581, 585 (D. Kan. 2001).

Although federal courts have not reached agreement on a single best method of establishing factual allegations sufficient to support a meritorious defense, the Tenth Circuit has instructed that "[t]he critical concern is not with How the factual allegations are presented, but that they Are presented and presented in a timely enough fashion to permit the opposing party to question the legal sufficiency of the defense." *Id.* Because the factual allegations presented in the moving papers are deemed true, "normally there will be no need to introduce evidence on meritorious defense." *Id.*

JCP contends that, if given the opportunity, it will raise the following defenses to the breach of contract and quantum meruit claims asserted against it: "(a) There is no definitive agreement between JCP and Bizjet, as Bizjet merely provided JCP with an estimate of costs; (b) Bizjet performed its services negligently by performing repairs and services that were unnecessary and in an un-workmanlike manner; and (c) [ATS] agreed to take back the airplane and pay Bizjet in full." (Urdaneta Aff. ¶ 12.) The Court concludes that one or more of these constitute potentially meritorious defenses. If Bizjet did in fact perform its repair services negligently, this fact could entitle JCP to a verdict in its favor or at least some set-off or reduction of any amount owed. Further, the alleged defense that no contract existed between Bizjet and JCP would, if true, also constitute a meritorious defense to Bizjet's breach of contract claim. As pointed out by Bizjet, it

seems doubtful that JCP would have allowed the Aircraft to be sent to Bizjet and to be in Bizjet's possession for any period of time unless a contract for services was agreed upon. Nonetheless, JCP's factual averments must be accepted as true, and JCP apparently intends to challenge the existence of any "definitive" agreement.[5] The Court concludes that JCP has, by and through statements in its brief and the Urdaneta Affidavit, raised meritorious defenses that could impact whether money is owed to Bizjet and the amount owed.[6]

In sum, all three enumerated factors weigh in favor of setting aside the default, and JCP has met its burden of showing "good cause" to set aside the default pursuant to Federal Rule of Civil Procedure 55(c). JCP's delay in filing the Motion to Vacate after hiring Tulsa counsel is an additional factor that weighs against setting aside default; however, it is not sufficient to outweigh the other three factors.

**III.   Imposition of Bond**

In the event default is set aside, Bizjet requests that the Court require JCP to post a bond in the amount of Bizjet's remaining claims. Bizjet contends that JCP is "dissipating its assets while appearing to lack a source of continuing revenue." (Resp. to Mot. to Vacate 10.) Bizjet submitted evidence that Urdaneta has formed a new company that is located at the JCP Florida Office, indicating that JCP may indeed be on the verge of dissipating its assets and avoiding a potential

---

[5] Bizjet seems concerned that these defenses are being manufactured by JCP to delay an inevitable judgment. If the Court is persuaded, at future points in these proceedings, that JCP filed pleadings, written motions, or other papers that were presented to the Court for an improper purpose, such as to cause unnecessary delay or needlessly increase the cost of litigation, JCP is subject to sanctions pursuant to Federal Rule of Civil Procedure 11(b)(1).

[6] The Court does not reach the question of whether JCP's third defense is potentially meritorious because the other two defenses are sufficient to weigh in favor of setting aside the default.

9

judgment in this case. JCP argues that the Court does not have authority to set conditions, *i.e.*, require the posting of a bond, when setting aside a default pursuant to Rule 55(c) and that Bizjet's cited cases all arise in the context of Rule 60(b).

Contrary to JCP's argument, the Court has discretion to set aside an entry of default on specific conditions:

> The court's inherent power and use of discretion also enables it to set aside default entries on various conditions. The imposition of conditions as part of granting a Rule 55(c) motion can be used to rectify any prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation. The most common type of prejudice is the additional expense caused by the delay, the hearing on the Rule 55(c) motion, and the introduction of new issues. These burdens can be eased by requiring the defaulting party to provide a bond to secure costs, to pay court costs, or to cover the expenses of the appeal. Imaginative and flexible use of the power to impose conditions on the granting of relief under Rule 55(c) can serve to promote the positive purposes of the default procedures without subjecting either litigant to their drastic consequences. The use of conditions also permits the court to be responsive to the special problems raised by particular situations in order to avoid possible inequities. Terms and conditions can be used to facilitate discovery, compensate for obstructionist tactics, and protect the ability of the nondefaulting party to obtain an appropriate remedy.

10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2700 (3d ed. 1998) (footnotes omitted); *see also Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133, 1136 (10th Cir. 1974) ("The imposition of conditions in an order vacating a default is a device frequently used to mitigate any prejudice which plaintiff may suffer by allowing defendants to plead."). In this case, the Court concludes that the imposition of a bond in the amount of $750,000.00 is an appropriate condition of setting aside default in order to protect the ability of Bizjet to obtain an appropriate remedy. Bizjet has made a showing that JCP is of questionable financial viability and that JCP was dilatory in filing its Motion to Vacate. The Court finds that a

$750,000.00 bond, although not the full amount sought by Bizjet, is sufficient to avoid potential inequities and rectify prejudice suffered by Bizjet as a result of JCP's litigation conduct.

**IV.     Conclusion**

Plaintiff's Motion for Default Judgment (Doc. 22) is DENIED.  JCP's Motion to Vacate (Doc. 58) is GRANTED, and the default entered by the Court Clerk on May 28, 2008 (Doc. 13) is SET ASIDE pursuant to Federal Rule of Civil Procedure 55(c).  As a condition of set aside, JCP is ORDERED to post a bond in the amount of $750,000.00, in accordance with Northern District Local Civil Rule 62.2, no later than December 31, 2008.  JCP shall answer the Complaint no later than December 8, 2008.  Bizjet's Opposed Motion to Amend the Scheduling Order (Doc. 70) is GRANTED, and a new scheduling order will be entered consistent with Bizjet's proposal.

**ORDERED this 26th day of November, 2008.**

_____
**TERENCE KERN
United States District Judge**